UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

\* \* \*

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>vs.<br><br>JULIAN VALDEZ-ARAGON,<br><br>Defendant. | Case No.: 2:10-CR-00089-GMN-LRL<br><br>**ORDER** |

Before the Court is a Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody (ECF No. 70) filed by Petitioner Julian Valdez-Aragon. Also before the Court is Petitioner's Motion to Preserve Forensic Records (ECF No. 73) and his Request for Leave to Supplement Motion to Vacate, Set Aside or Correct Sentence (ECF No. 74). The Government filed a timely Response (ECF No. 75). Petitioner's Motion for Leave to File a Supplement (ECF No. 74) and to Extend Time to Reply (ECF No. 76) were both granted.

In its Motion to Preserve (ECF No. 73), Petitioner seeks an Order directing the Las Vegas Metropolitan Police Department (hereinafter "LVMPD") to "produce copies and preserve the originals of the log book and all the forensic reports for the analysis of the controlled substance seized in this case and examined by Forensic Scientist II, Jason Altnether, on or about February 25, 2010." (ECF No. 73).

**FACTS**

Petitioner was convicted, following a guilty plea, of possession with intent to distribute methamphetamine in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(A)(viii). (ECF No. 49) and filed the instant motion to vacate his sentence. (ECF No. 70). Defendant asserts that his

1

attorney provided constitutionally ineffective assistance by failing to challenge the chemist's report with respect to the purity of the methamphetamine involved in the offense.

**LEGAL STANDARD**

To establish ineffective assistance of counsel, a petitioner must first show that counsel's conduct was not "within the range of competence demanded of attorneys in criminal cases." Strickland v. Washington, 466 U.S. 668, 687 (1984).  Second, a petitioner must also show that he was prejudiced by that performance. See Strickland, 466 U.S. at 692.

Under this standard, the question is whether "counsel's representation fell below an objective standard of reasonableness," and the Court's inquiry begins with a "strong presumption that counsel's conduct [falls] within the wide range of reasonable representation." United States v. Ferreira-Alameda, 815 F.2d 1251, 1253 (9th Cir. 1987) (as amended) (citations omitted). The Supreme Court recently explained that courts evaluating ineffective assistance claims "must apply a strong presumption that counsel's representation was within the wide range of reasonable professional assistance" and that a petitioner must show that "counsel made errors so serious that counsel was not functioning as the counsel guaranteed the defendant by the Sixth Amendment." Harrington v. Richter, __ U.S. __, 131 S.Ct. 770, 787 (2011) (internal citations and quotations omitted).  Accordingly, "the standard for judging counsel's representation is a most deferential one" because "the attorney observed the relevant proceedings, knew of materials outside the record, and interacted with the client, with opposing counsel, and with the judge." Id. at 788.  Petitioner must also demonstrate that there is a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." 466 U.S. at 694.

Rule 6(a) Governing Section 2255 Proceedings states in relevant part, as follows:

(a) Leave of Court Required. A judge may, for good cause, authorize a party to conduct discovery under the Federal Rules of Criminal Procedure of Civil Procedure, or in accordance with the practice and principles of law. If necessary for effective

discovery, the judge must appoint an attorney for a moving party who qualifies to have counsel appointed under 18 USC 3006A.

(b) Requesting Discovery. A party requesting discovery must provide reasons for the request. The request must include any proposed interrogatories and requests for admission, and must specify any requested documents.

**ANALYSIS**

Petitioner claims that his counsel was ineffective for failing to object to the determination that the methamphetamine mixture was the equivalent of 671.85 of "pure" methamphetamine and cites to Baylor v Stelle, 94 F.3d 1321, 1323-24 (9th Cir. 1996). (ECF No. 70 at 5, ECF No. 74-1 at 7). Petitioner asserts that when he specifically requested that his counsel "object to this finding and request another lab examination from our own chemist," his counsel rejected the request because the analysis was unquestionable. Id. However, after his subsequent review of the discovery, Petitioner asserts that,"the calculation of the "pure" methamphetamine weight and the manner in which the LVMPD Forensic Laboratoy(sic) tested the drug purity were <u>disputable</u>. For example, the discovery at hand shows that the chemist mixed the contents of three bags together and performed a single purity test, rather than doing an individual test to each bag, thus, the reliability of the test was disputable." (ECF No. 70 at 6)(emphasis in original).

In his Supplement, Petitioner additionally questions the reasonableness of the lab report which he interprets as indicating that the total amount of methamphetamine taken from three different bags was 671.85 grams, yet after testing, all 671.85 grams were determined to be 100% pure. (ECF No. 74-1 at 6) Petitioner cites to U.S. v. Alfeche, 942 F.2d 697, 699 (9th Cir. 1991) and U.S. v. Bogusz, 43 F.3d 82, 83 (3rd Cir. 1994) to support his argument that "manufactured methamphetamine is not 100% pure regardless of the sophistication of the equipment." (ECF No. 74-1 at 6).

As an addendum to his supplement, Petitioner provides one page from the Government's discovery, a summary "Report of Examination" in which the forensic scientist who tested the methamphetamine reports that he received 3 packages containing 671.85 grams, completed an examination and identified the three packages to contain 100% methamphetamine. (ECF No.74-1 at 10). Petitioner further provides a letter from the police department in response to Petitioner's request for "the log book report for the analysis of the controlled substance that was examined…"which states that a court ordered subpoena is required.(ECF No 74-1 at 13).

At Petitioner's sentencing hearing, the Court followed the recommendation of the Probation Office in the Presentence Report regarding the calculation of the Base Offense Level at Level 36 pursuant to U.S.S.G. § 2D1.1(c)(2) because the actual amount of methamphetamine possessed was at least 500 grams but less than 1.5 kilograms –specifically finding the 690 gross grams of methamphetamine was the equivalent of 671.85 grams of methamphetamine. Therefore, Petitioner would have to demonstrate that there is a "reasonable probability that, but for counsel's unprofessional errors," the amount of methamphetamine would have been shown to be less than the equivalent of 500 grams of pure methamphetamine and "the result of the proceeding would have been different."

The Government's Response opposes Petitioner's request for discovery citing to Rule 6 and Shah v. U.S., 878 F.2d 1156, 1161 (9th Cir. 1989) noting that the Petitioner provides nothing which demonstrates or even suggests that the contents of the three bags were mixed and tested for purity together in one test. (ECF No. 75 at 7-8). The Government also argues that even if only one test were performed, Petitioner has failed to demonstrate that the results of testing three packages separately would have been different. Id. The Government questions the Petitioner's reference to the Third Circuit's decision in U.S. v. Bogusz, arguing that the statement "manufactured methamphetamine is not 100% pure regardless of the sophistication of the equipment" is *dicta* with no explanation. (ECF No. 75 at 9).

The Court finds that the Petitioner has met its burden to establish good cause pursuant to Rule 6(a) and hereby grants Petitioner's Motion to Preserve (ECF No. 73).

**CONCLUSION**

Accordingly, the Court hereby ORDERS the Las Vegas Metropolitan Police Department to produce copies and preserve the originals of the log book and all the forensic reports for the analysis of the controlled substance seized in this case and examined by Forensic Scientist II, Jason Altnether, on or about February 3, 2010, signed February 25, 2010, for subject Julian VALDEZ, Case 10 0215-3558."

**IT IS SO ORDERED.**

**DATED** this 22nd day of January, 2014.

_____
Gloria M. Navarro, Chief Judge
United States District Court